UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DIANE L. MCGUIRE,

    Plaintiff,

v.

INTERNATIONAL PAPER COMPANY
RETIREE SERVICE CENTER,

    Defendant.

Case No. 1:09-cv-740

Dlott, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Diane L. McGuire, through counsel, filed a complaint in state court alleging that Defendant International Paper Company Retiree Service Center used the "wrong hire date" when calculating Plaintiff's pension payments. (Doc. 1-1 at 3). Defendant removed the action to this federal court on the basis of ERISA's complete preemption doctrine. (Doc. 1). Plaintiff filed a motion for partial summary judgment (Doc. 20). In addition to filing a response, Defendant filed a counter-motion for judgment as a matter of law (Docs. 21, 23). Plaintiff has filed no response to Defendant's counter-motion. Pursuant to local practice, the pending motions have been referred to the undersigned magistrate judge for initial consideration and a report and recommendation. *See also* 28 U.S.C. §636(b).

**I. Background**

The parties agree that Plaintiff was hired on October 13, 1975 by Champion International Corporation, a papermaking company in Hamilton, Ohio. (Doc. 21 at 3). Plaintiff does not dispute that she was laid off from her employment for a period of

approximately 20 months on October 8, 1976. (Doc. 22; Doc. 21-2, Affidavit of Sharon Barger at 3, ¶14; Doc. 21-9 at 2-3). In 2001, Plaintiff alleges that Smart Papers Holdings LLC d/b/a Smart Papers purchased the paper mill at which she was employed. Plaintiff continued to work for Smart Papers until her employment ended on May 1, 2009.[1] (Doc. 21-2 at 4; Doc. 1-6 at 1-2). After her termination, Plaintiff began receiving pension benefits from the Retirement Plan of International Paper Company ("IP Plan"), an employee pension benefit plan governed by and maintained pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, et seq. ("ERISA"). Plaintiff alleges that her benefits were incorrectly calculated based upon an error by Smart Papers in listing her original hire date as 5/17/78 rather than 10/13/75. (Doc. 3).

In her complaint, Plaintiff claims that Defendant is liable for falsely using the wrong hire date, and for failing to correct her hire date in breach of its fiduciary duty. In seeking partial summary judgment, Plaintiff asks this court to determine that no material issue of fact is in dispute concerning the following: 1) that Plaintiff complained that Defendant used a wrong hire date in writing several times prior to this lawsuit and therefore that Plaintiff has exhausted her administrative remedies; 2) that Plaintiff has a hire date of October 13, 1975 for pension purposes; and 3) that Plaintiff was laid off only once, not twice. (Doc. 20). Defendant's counter-motion argues in part that this case should be dismissed based upon Plaintiff's failure to exhaust her administrative remedies. (Doc. 21). For the reasons explained herein, I recommend that Plaintiff's motion be denied and that Defendant's

---

[1] Plaintiff alleges a termination date of April 26, 2009, while Defendant's records indicate a date of May 1, 2009. Because Defendant has supported its date with unrebutted evidence, Defendant's date is used by the court.

2

motion be granted.

## II. Analysis

### A. Standard of Review

On summary judgment, a court must determine whether there is any genuine issue as to any material fact in dispute. *See* Rule 56(c), Fed. R. Civ. P. Although Defendant's "Motion for Judgment" does not specify the procedural rule upon which Defendant relies, it is clear from the exhibits attached to the motion that Defendant's counter-motion also proceeds under Rule 56(c).[2] In a motion for summary judgment, a court "must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir.2007) (internal quotation marks omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed.R.Civ.P. 56(c)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.* In this case, summary judgment should be granted to the Defendant based upon the uncontested evidence filed by Defendant in support of its motion.

---

[2] A motion for judgment as a matter of law under Rule 50 is not a proper pretrial motion. When a court considers matters outside the pleadings, a pretrial motion falls under Rule 56(c). *See Harris v. Metropolitan Government of Nashville and Davidson County*, Tenn., 594 F.3d 476, 481-482 (6th Cir. 2010).

**B. Plaintiff's Hire Date and Its Relationship to the Calculation of Pension**

Plaintiff's "hire date" of October 13, 1975 is undisputed by Defendant.  However, Defendant persuasively argues that Plaintiff's hire date, technically speaking, is irrelevant for purposes of calculating her pension.  Rather, Plaintiff's pension is calculated by determining her years of "credited service" in the International Paper Pension Plan.  Credited service is in turn calculated by review of when Plaintiff first became eligible to participate in the Plan - a date entirely different than Plaintiff's original "hire date."  Under the terms of the 1962 Champion Plan in effect at the time of Plaintiff's original hire date, an employee was not eligible to participate in the pension plan unless and until he/she had completed "one year of Continuous Service."  (Doc. 21-2, Affidavit at ¶22; Doc. 21-5 at 15, Plan 0411, §3.1(b)).  The term "Continuous Service" was further defined as "the period of continuous, regular, full-time employment with [Champion International]."  (*Id.*; Doc. 21-5 at 10*).*

Defendant offers undisputed evidence that although Plaintiff was hired on 10/13/75, she was laid off on 10/8/76 - less than a week prior to completing a full year of "continuous service."  Because she had not worked for one complete year at the time she was laid off, she was not eligible to become a plan participant under the terms of the retirement plan then in effect ("the 1976 Plan").  (Doc. 21-2, Affidavit at ¶23).  Plaintiff remained unemployed until May 17, 1978.  (Doc. 22 at 10-11).  The 1976 Plan stated: "If an employee does not satisfy all of the eligibility requirements under Section 2.1(b) on the Entry Date referred to in (1)(A) above, then [s]he shall enter into participation in the Plan as of the first day of the month during which [s]he satisfies all of such eligibility requirements." (Doc. 21-2, Affidavit at ¶25, *citing* Doc. 21-5, Plan 0411, §2.5(b)(2)).

4

Based on Plaintiff's hire date of 10/13/75, her first day of eligibility in the 1976 Plan would have been 10/13/76 if she had remained continuously employed through that date. Because she was laid off prior to becoming eligible, Defendant asserts that her first "eligible" date was the date on which she became re-employed, because one of the essential criteria for being eligible to participate in the Plan was that the person be an "Employee." (*Id.* at ¶26, *citing* Doc. 21-5, Plan 0411, §2.1(b)). Under Defendant's interpretation of the 1976 Plan, then, Plaintiff became an eligible participant in the 1976 Plan upon her return to work on May 17, 1978.[3] Defendant therefore calculated Plaintiff's pension based on her presumed first date of eligibility in the IP Plan on May 17, 1978, the date that she returned to employment.

### B. Failure to Exhaust ERISA Plan Remedies

Plaintiff's first claim, that the IP Plan used the wrong "hire date" in calculating her retirement benefits, constitutes a clam for ERISA plan benefits pursuant to 29 U.S.C. §1132(a)(1)(B). Prior to seeking judicial relief, a litigant must exhaust her administrative remedies by making a claim for benefits "in accordance with a plan's reasonable procedure for filing benefit claims." See 29 C.F.R. §2560.503-1(e)(emphasis added). The Sixth Circuit has clearly held that an ERISA plan participant may not circumvent the plan's claim procedures by prematurely seeking judicial review. *See Miller v. Metropolitan Life Ins. Co.,* 925 F.2d 979, 986 (6th Cir. 1991). Both Plaintiff's motion for partial summary judgment and Defendant's cross-motion seek this court's determination as to whether Plaintiff has

---

[3] Defendant does not fully explain its interpretation, which arguably was more generous than the strict terms of the 1976 Plan. Depending on the construction of the term "*Continuous* Service," Plaintiff was either five days or an entire year short of "continuous service" on May 17, 1978. However, the IP Plan grants the Plan Administrator the "discretionary power and discretionary authority" to interpret the Plan. (Doc. 21-3 at 57, Article 12.01(b)).

5

adequately exhausted her administrative remedies. "[A]pplication of the administrative exhaustion requirement in an ERISA case is committed to the sound discretion of the district court." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.2d 410, 418 (6th Cir. 1998).

The record supports Plaintiff's position that she undertook two steps prior to filing this suit. First, on October 15, 2008, Plaintiff's current attorney wrote to the "International Paper Retiree Service Center" in Ocala, Florida to request that the Service Center "[confirm] her hire date was 10-13-75." (Doc. 1-6 at 9). The correspondence suggests that the IP Plan has listed a "wrong" "hire date" but does not identify the "wrong" hire date allegedly being used. In the same correspondence, Plaintiff's attorney requested "a copy of the writing or document upon which you base your claim that she must be terminated from Smart Paper before being eligible for the International Paper Pension." (*Id.*).

In addition to her attorney's correspondence, Plaintiff alleges that her labor union filed a grievance on her behalf. Although the issue grieved by the union is not entirely clear because neither Plaintiff nor Defendant have included a copy of the grievance as an exhibit in this record, the grievance appears to have related to the position of International Paper that no pensions were due to employees who remained employed at Smart Papers, LLC. (Doc. 20-1, Affidavit of Plaintiff at 2, stating that she "had the union complain" about a requirement that employees were required to quit Smart Papers to be eligible to receive an IP pension).

The IP Plan at issue in this case requires a claimant to make any request for benefits in writing to the Plan Administrator. (Doc. 21-2, Affidavit at ¶30-31, *citing* Doc. 21-4 at 19). The Plan Administrator of the IP Plan is Mark Azzarello, who is located at IP's headquarters in Memphis, Tennessee. (*Id.*). Plaintiff does not dispute that she has never

6

filed or contested a claim for benefits pursuant to the IP Plan by sending a request to the Plan Administrator. (*Id.* at ¶32). The IP Plan permits an authorized representative to act on behalf of a participant, but only if the participant has provided written authorization to the Plan to permit the representative to file a claim.

Plaintiff's first claim - challenging her "hire date" for purposes of calculating her pension - should be dismissed without prejudice because she has failed to invoke or comply with the Plan's claim procedures. Plaintiff never provided written authorization for counsel to act on her behalf. (*Id.* at ¶33). Even assuming that deficiency might be excused, Plaintiff's own exhibits reflect that her attorney sent correspondence seven months prior to Plaintiff's retirement to a Service Center in Ocala, Florida rather than to the Plan Administrator in Memphis, Tennessee.

Importantly, Counsel's letter made *no* claim for benefits, nor did it seek a recalculation of benefits, reference Plaintiff's credited years of service, or her plan eligibility date. Rather, the letter expressly sought a correction of Plaintiff's hire date, as well as a copy of any documentation showing that an eligible participant "has to quit Smart Paper to be eligible for the International [Paper] Pension." (*Id.*). More than six months later, the record reflects that by letter dated April 27, 2009, the Ocala, Florida Retiree Service Center mailed Plaintiff "[i]n response to your request," a "retirement package," that included forms and documents required to "commence your benefit payments for the Retirement Plan of International Paper Company" based on a "requested Retirement Date of **06/01/2009**." (Doc. 16-1 at 40)(emphasis original). Also in the record is a "Participant Information Statement" listing "credited service" of 22.8 years and plaintiff's "Original Date of Hire" of 10/13/75. No markings are written next to the calculation of credited service or Plaintiff's

7

hire date.  (*Id.* at 74).

Two notations do appear; the first of which concerns Plaintiff's "Retirement Date" of "06/01/2009."  Plaintiff's initials appear next to a handwritten note that corrects that date by stating that it "should be 05/01/2009."  (*Id.*).  A typewritten retirement plan "start date" of 05/17/1978 appears on the same form, adjacent to which Plaintiff has written "should be 10/13/1975."  (*Id.*).  The Participant Information Statement is dated April 17, 2009, but it is unclear whether, when, or how Plaintiff wrote back in an attempt to communicate her dispute with her calculated **eligibility** date.  (*See* Doc. 4-1 at 4).  In reference to the document, Plaintiff's affidavit states only that "When I applied for my pension after I was laid off from Smart Papers, I put in writing my complaint that my **hire date** was 10-13-75." (Emphasis added).  Given Plaintiff's focus on her "hire date" and lack of any challenge to the calculation of years of "credited service," I cannot find that the Defendant reasonably would or should have interpreted Plaintiff's notation as an appeal for recalculation of her pension benefits and/or her creditable years of service.

The IP Plan sets forth specific procedures for claims for benefits which were not followed in this case.  When a claim is denied in whole or in part, a claimant will be provided "written notice of the denial of the claim within 90 days after the plan administrator's receipt of the claim."  (Doc. 21-4 at 22).  Any written denial will include references to specific Plan provisions on which the denial is based, an explanation of the claims review procedure, and a review process concerning any denial of a claim for retirement benefits.  (*Id.* at 23).

Because she did not comply with the reasonable procedure for seeking benefits review, Plaintiff has failed to exhaust the ERISA plan remedies available to her.  *See, e.g.,*

8

*Phipps v. Metropolitan Life Ins. Co.,* 625 F. Supp. 1038, 1040-42 (S.D. Ohio 1985)(dismissing complaint without prejudice).  Although a court may excuse non-exhaustion if a plaintiff demonstrates that exhausting her administrative remedies would prove futile, in this case Plaintiff has made no attempt to demonstrate that she could not obtain relief by resorting to the administrative procedures available to her.  *Hill v. Blue Cross and Blue Shield of Mich.,* 409 F.3d 710, 719 (6th Cir. 2005).  The exhaustion requirement serves important federal interests, including "interests in efficiency, predictability, and uniformity."  *Conkwright v. Frommert*, ___ U.S. ___, 130 S. Ct. 1640, 1649 (2010).  In keeping with those interests, this court should dismiss Plaintiff's first claim based upon her failure to exhaust her administrative remedies.

### C. Claim for Breach of Fiduciary Duty

Defendant argues that the second claim in Plaintiff's complaint, breach of fiduciary duty, also must be dismissed because such a claim is cognizable under ERISA only when a plaintiff's claim for recovery would benefit the Plan as a whole.  29 U.S.C. §1132(a)(2). "One well-recognized limitation on §502(a)(2) claims is that any recovery sought must be for the plan as a whole rather than individual beneficiaries or participants."  *See Estate of Spinner v. Anthem Health Plans of Virginia*, 589 F. Supp.2d 738, 745 (W.D. Va. 2008), *aff'd*, 388 Fed. Appx. 275 (4th Cir. 2010)(*citing Mass. Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985)).  A claim for an individual increase in benefits based upon a specific individual's credited years of service is "the quintessential example of relief that is not available under section 502(a)(2)," *Coyne & Delany Co. v. Blue Cross & Blue Shield of Va., Inc.*, 102 F.3d 712, 714-15 (4th Cir. 1996)(emphasis added); *see also Estate of Spinner*, 589 F. Supp.2d at 745 (dismissing individual claim, collecting cases).

To the extent that Plaintiff may argue that her breach of fiduciary duty claim falls under 29 U.S.C. §1132(a)(3), the claim should be dismissed because Plaintiff has an adequate legal remedy under §1132(a)(1)(B). *Compare Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996)(authorizing individual remedy where plaintiffs otherwise would be bereft of any remedy); *see also Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209-10 (2002). In general, Congress "did not contemplate that [29 U.S.C. §1132(a)(3)] would be used by plaintiffs seeking individual relief." *Coyne v. Delany Co.,* 102 F.3d at 715. Thus, to the extent that Plaintiff seeks a recalculation of her individual benefits, her relief constitutes a legal claim under 29 U.S.C. §1132(a)(1)(B), and would not a claim for "other appropriate *equitable* relief" under 29 U.S.C. §1132(a)(3). *Id.*

### D. Claim for Violation of Unspecified Federal Statute or Rule

The third claim in Plaintiff's complaint alleges that Defendant violated "one or more federal statutes or rules designed to protect retirees such as the Plaintiff." (Doc. 3 at ¶27). The court agrees with Defendant that Plaintiff's conclusory allegations that she was "damaged by the Defendant's violations" of unspecified federal statutes or rules are insufficient to state a claim as a matter of law. Accordingly, Plaintiff's third claim is subject to dismissal under Rule 12(b)(6), Fed. R. Civ. P. *See also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

### E. Merits of Presumed Claim for Recalculation of Benefits

To the extent that Plaintiff's presumed claim for a recalculation of benefits is not dismissed for failure to exhaust, Defendant argues that it should be rejected on the merits. Under the IP Plan, the Plan Administrator retains discretionary authority to interpret the provisions of the Plan. (Doc. 21-3 at 57, Article 12.01(b)). When a Plan Administrator

10

retains discretionary authority, a court will uphold a calculation of benefits under an ERISA plan so long as the exercise of that authority was not arbitrary and capricious, but was instead "rational in light of the plan's provisions." *Miller*, 925 F.2d at 984 (*quoting Daniel v. Eaton*, 839 F.2d 263, 267 (6th Cir. 1988)). Because I have concluded that Plaintiff's first claim should be dismissed for failure to exhaust, it is unnecessary for the court to reach the merits of that claim.

In the event that the presiding district judge believes that Plaintiff's failure to exhaust should be excused, however, I alternatively recommend that Defendant be granted judgment as a matter of law on the merits. Although Plaintiff's complaint ostensibly seeks a determination that her "hire date" was October 13, 1975, the Defendant does not dispute that date. Read literally, then, Plaintiff's claim for a determination that her "hire date" was October 13, 1975 would be subject to dismissal because there is no dispute on this issue, and no other relief could be obtained by Plaintiff through this court's confirmation of her undisputed "hire date."

Assuming that Plaintiff disputes a different determination regarding her benefits calculation, it remains unclear whether Plaintiff disputes her eligibility date, her years of credited service, both, or something else entirely. Plaintiff mistakenly assumes that Defendant has used a "hire date" of May 17, 1978 to calculate her years of service, but counsel's 2008 correspondence also suggests the possibility of a dispute concerning whether Plaintiff was required to quit working for Smart Papers in order to be eligible for an IP Plan pension. Yet another possible dispute concerns whether Plaintiff was laid off

11

from her employment once or twice.[4]

Regardless of the nature of the parties' dispute, the unrebutted evidence offered by Defendant in support of its motion confirms the reasonableness of the Plan Administrator's calculations. As discussed above, it was reasonable based on Defendant's records of Plaintiff's employment to determine under the 1976 Plan that she was not eligible for participation until May 17, 1978. Defendant's records reflect that Plaintiff left International Paper's employment in February 2001. Based on employment records presented to this court, Defendant calculated that Plaintiff had 22.8 years of credited service under the IP Plan. (Doc. 21-2, Affidavit at ¶¶28-29).

The only evidence that Plaintiff has offered in support of her motion for partial summary judgment is an affidavit that states that she has a hire date of October 13, 1975, a fact not in dispute. Plaintiff also includes copies of 5, 10, and 20 year service award programs from Champion International, and references her 20 year ring. (*See* Doc. 22). Plaintiff has filed no response at all to Defendant's documents and explanation of how it arrived at Plaintiff's plan eligibility date of 05/17/78, and has failed to dispute Defendant's explanation of the calculation of Plaintiff's years of credited service. As Plaintiff was credited with 22.8 years of service, Plaintiff's contention that she was employed for more than 20 years does not raise a genuine issue of material fact.

### III. Conclusion and Recommendation

For the reasons stated herein, **IT IS RECOMMENDED THAT:**

1. Plaintiff's motion for partial summary judgment (Doc. 20) be **DENIED;**

---

[4] Aside from Plaintiff's motion for partial summary judgment, the record is devoid of any reference to this particular dispute.

    2.    Defendant's cross-motion for summary judgment (Doc. 21) be **GRANTED** insofar as:

        a. Plaintiff's second and third claims should be **dismissed with prejudice**;

        b. Plaintiff's first claim should be **dismissed without prejudice** based on her failure to exhaust the remedies available to her under the IP Plan, or *in the alternative*, should be **dismissed with prejudice** because Defendant has established through unrebutted evidence that its calculation of benefits was reasonable;

    3. All claims having been disposed of on summary judgment, this case should be closed and stricken from the active docket.

                                      *s/ Stephanie K. Bowman*
                                      Stephanie K. Bowman
                                      United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| DIANE L. MCGUIRE, | Case No. 1:09-cv-740 |
| Plaintiff, | Dlott, J.<br>Bowman, M.J. |
| v. | |
| INTERNATIONAL PAPER COMPANY<br>RETIREE SERVICE CENTER, | |
| Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).